Case number 16-5499, Phaedra Spradlin v. Beads and Seeds Inns LLC. Arguments not to exceed 15 minutes per side. Mr. Boydston, for the appellant, you may proceed. May it please the court, I'm Richard Boydston. I represent the appellant, Phaedra Spradlin, trustee, who is the plaintiff below. I'd like to reserve two minutes for rebuttal. You may. The trustee seeks to avoid a transfer to Beads and Steeds of a farm in 2010, 133 acres in Garrett County, Kentucky. The farm was owned by Metal Lake, which in turn was fully owned by the debtors in the Chapter 7 case, the Howlands, Mr. and Mrs. The Howlands contracted to buy the farm in 2007 for $1.6 million, and right before the closing, they assigned that contract to Metal Lake, an LLC that they formed just for that purpose. Three years later, they paid $750,000 or so towards the mortgage debt. They borrowed all of the $1.6 million purchase price, and then 30 days later, they sold the farm for $800,000 to Beads and Steeds, which was formed at that time for that purpose by Robert Hale. The Howlands filed a Chapter 7 a little more than two years later, and this action seeks to undo the transfer and or recover the difference between the fair market value and the purchase price. Let me ask you this question. The transfer, the last transfer, was from Metal Lake, correct? Correct. And so let's just say you set that aside, then doesn't that put the title, in effect, back in Metal Lake? Well, yes. And that's the first step. I know what your argument is about the confluence between them, but the setting aside the last conveyance wouldn't put best the title back in the debtors. No, there's another thing that has to happen, Your Honor. Okay, I just wanted to clarify for my own self that point. Right, that's a fraudulent transfer. You only can go back two years, right? No, under Kentucky statute, you can go back five. Yeah, 378, 010, and 020. And under the bankruptcy code, section 544, the trustee has the rights under state law as well as under the bankruptcy code. The bankruptcy code 548 has a two-year look back. And so I think it's without question that the timing of this filing was beyond the two years of the transfer. But to go back to what you asked, Judge Guy, the necessary ingredient to garner the half million dollar plus that the trustee alleges is the difference between the purchase price and the value at that time is for the court to hold that the debtors and Metal Lake were one and the same, the alter ego theory. Right, and on that point, another question, and I don't want to get you off, go back to the order in which you want to present this, but you make the statement that the creditors of debtors and Metal Lake treated them as if they were one and the same, but I don't see any support to demonstrate that that was the case. So at some point, if you would address that, but don't do it now if it's not in the order that you want. I'm happy to address that because that really goes to the other claim for substantive consolidation. I don't think that's a necessary part of the claim with respect to alter ego. The alter ego claim doesn't rely upon that as a principle fact. What's the best case that you have from Kentucky that the Kentucky Supreme Court would allow this reverse corporate veil piercing that you wish to do, rather than impose liability, which is usually what veil piercing does, to actually consolidate entities? What's the best Kentucky case that you have that that is Kentucky law? Well, the best Kentucky case is the last Kentucky Supreme Court case to speak on this issue, which is Intertel v. Lynn Station, and that's a 2012 case, and really, the court at that time refined and articulated the direct veil piercing theory under Kentucky law. At the time, the court said that we have three theories that really achieve pretty much the same end, the instrumentality theory, the alter ego theory, and the equitable theory. What the court came out with for, again, direct piercing is that the person alleging alter ego liability has to prove that there's domination of the corporation by the owner, shareholder, or here, unit holders, because Metal Lake was a limited liability company. The second prong of it is whether the circumstances that existed at the time of the transfer or at the time of the action that's being complained of would sanction a fraud or promote injustice. Those are the two learnings from that case. Was this a case for imposing liability under the veil piercing theory, or was it a consolidation case like this? No. I'm not talking to this panel about consolidation. Well, you're trying to use that for consolidation, aren't you? No. No, I'm not. That was your other theory. It is my other theory. Federal substantive consolidation theory. Correct. And you're also, in effect, trying to consolidate it under Kentucky law. That's what happens with the use of alter ego theory or piercing the corporate veil. Do you have a case where the Kentucky courts have done it for purposes of consolidation like you want to do it? Yes, I do. There was a case decided in the Kentucky Court of Appeals July 15th, and I wasn't familiar with the procedure, but I've sent that case to the court. It's Lee versus Lee. And in that case, there was liability imposed in the reverse direction. I also apologize, but I've located another case. Did we get that as a so-called 28-J letter? I don't know the rule number, but I trust you did. I gave it to opposing counsel. And I have the case here, and I can give the citation in a moment. But in addition, there is nutrition rich versus nutrition resources, a case that I apologize I didn't cite. It's pretty much the same holding. Again, a court of appeals case affirming a trial court's utilization of piercing the corporate veil. And that's a 2003 case at 2003 Westlaw, 133-9309. But in each case so far, if I've been hearing you right, you're saying, well, this lays out the doctrine of veil piercing, but you keep calling your theory reverse veil piercing, and how does the one allow the other? Because as I understand it, the reverse does, in effect, consolidate, not just change liability. Well, yes. I think Judge Griffin's asking, is there one that has indeed done exactly what it is you want to say? No. Are you saying it's this Lee case, or not even that one is really exactly the same? Well, both of those. You said no. What was the no for? That the cases don't do what you say you want them to do? I'm not sure why I said no. Okay. All right. I've seen people who do that. I think I said that for, let me speak. Okay. Well, to strike the no, go ahead with your argument. Neither one of those cases are on these kind of facts. That's for sure. Isn't that a problem? I mean, we have to figure out what the Supreme Court of Kentucky would do on this. There's not a case on point. It's kind of hard for us to say Kentucky Supreme Court would recognize this kind of veil piercing. Well, I don't think it's hard. And, of course, I'm an optimist on that question. But you also have the federal substantive consolidation law that is kind of your backup position, too. That is not my backup position in this argument, Your Honor. I'm addressing the alter ego theory. And in this Court's ruling in Rainier v. Union Carbide, the Court set out what it would do if there wasn't controlling precedent. This actually had to do with Kentucky controlling precedent. And you look at analogous cases and relevant dicta in the Supreme Court of Kentucky. You look at Kentucky Court of Appeals cases. And you look at foreign jurisdictions. But let me tell you, there's an interesting parallel here because that's exactly what the Kentucky Supreme Court did in 2012. The federal substantive consolidation doctrine is not a backup position for you? Have you abandoned that argument? I haven't abandoned it, but I really am so anxious to argue this one issue. Okay. It's not as strong as the Kentucky state law. I think the Kentucky alter ego is a very, very strong argument. I understand. And, again, talking about how this Court would look to Kentucky decisions and actually what would the Kentucky Supreme Court do, the Kentucky Supreme Court actually did do that in the Intertel v. Lynn Station case. It looked at two Seventh Circuit cases. It looked at Bloomberg on corporate treaties. In its footnote five, it looked at cases from three other jurisdictions. And then on page 166, it said, and I quote, there is, however, authority for piercing the veil of any related entity. I'm getting close to reverse veil piercing with that. Not quite there. Well, I'm moving towards it. And in the cases that are cited for that proposition of any related entity, there are three cases. One of them is from the First Circuit, year 2000, Brotherhood of Railway Engineers v. Springfield. And in that case, the issue was whether a subsidiary, this is non-point, but it's close, whether a subsidiary could be held liable under the Railway Labor Act for a liability of the parent. Again, this is alter ego. This is how would you make a subsidiary liable for the obligation of a parent. That is the reverse theory. And in the Intertel case, that gives you the roadmap of what the Kentucky Supreme Court would do were it faced with the issue. I don't have precedent on point. What would the Kentucky Supreme Court do? It would look to other cases that it's decided, none really on point. Courts of appeals cases, and with all due respect to the opposing brief, there's no court of appeal case in Kentucky that holds against this. What we have is two cases that hold in favor of reverse piercing, and then we have quite a bit of foreign law to that point. And I think the Elkay case is really a good one to look at because it involved a trustee. And what does a trustee do under these circumstances when they're – Sorry, what was the – you said Elkay? Elkay, E-L-K-A-Y. Oh, okay, got it. It's District Court, South Carolina. E-L-K-A-Y, got it. Right. I see my time is up, and I'll come back later. All right, you'll have your time for rebuttal. Thank you. Good morning. May it please the court. I am Adam Back, and I represent the Appellee Beads and Steeds Ends, LLC, and I'm here to urge affirmance of the bankruptcy court opinions and orders which were affirmed by the District Court for the Eastern District of Kentucky. Indisputably, the trustee cannot proceed with her fraudulent conveyance claims under the Bankruptcy Code or Kentucky law unless the transfer made by Meadowlake, a Kentucky limited liability company, is converted into a transfer made by the debtors. Let me just ask right there, there's no claim in this case that the original transfer from who are now the debtors to Meadowlake was a fraudulent transfer, is there? Correct, Your Honor. That has not been alleged. That is not before the court. Thank you. Your Honor, if I may reference something that was discussed just a few moments ago. If I understand the appellant's argument correctly, he seems to be saying now that there doesn't have to be a consolidation under reverse Kentucky reverse veil piercing, which by the way, as the court knows, Kentucky has never adopted. I take issue with that, Your Honor, because as a prerequisite for a trustee to apply state law, there has to have been a transfer by the debtor. The vehicle, the statutory authority for a trustee to apply state law is 11 U.S.C. 544. And as it's cited in the briefs, 544 specifically says the trustee shall have, as of the commencement of the case, the rights and powers of, or may avoid any transfer of property of the debtor. In other words, you don't even get to a reverse veil piercing theory unless there's been a transfer by the debtor. Well, I thought the, maybe this is semantics, which is what we deal in, but I thought there are, in effect, their reverse veil piercing theory was to make the transfer by Meadow Lake the transfer by the Howlands. Your Honor, I... If that were correct, then wouldn't that do the job? I mean, they're using, you can't say you can't use state law for this theory if the whole point of the theory is to make it a state law transfer by the Howlands. Yes, Your Honor, and as has been recognized, Kentucky has never adopted reverse veil piercing. The only Kentucky decision... They're trying to convince us that they would if they got to it. I'm not saying he's right, but I'm just saying procedurally, it seems to me that your Kentucky, your 544 argument doesn't defeat that. Were he to be right on the merits? And, Your Honor, before the court can reach that conclusion, the Regnier case provides some guidance as to what the court may consider. Specifically, the court looks to dicta and the decisional law of the state's highest court and opinions of the state's intermediate appellate courts for persuasive indicia of the high court's directions. In other words, a prediction as to what the Kentucky Supreme Court would say about reverse veil piercing. In this instance, the Kentucky Supreme Court has at least addressed in dicta reverse veil piercing, and that, of course, is the Turner v. Andrews case, which was a unanimous published decision of the Kentucky Supreme Court.  that Kentucky would probably not recognize reverse veil piercing. Moreover, in the Williams v. Oates case, a Kentucky appellate court decision, unpublished, it cites to Turner and notes that same speculation. The appellant has brought up this more recent Kentucky appellate case, Lee v. Lee. Your Honor, with all due respect, that case has no precedential – or excuse me. It has no value in terms of the determination because as it clearly states in the opinion, and I'm reading from page four of that opinion, on appeal the appellants do not challenge any of the court's factual findings regarding alter ego liability. In other words, the point that the appellant tries to make with the Lee case was not even before the Kentucky Court of Appeals. It was never appealed to that body. Moreover, this particular case furthers the argument that we've made about how reverse veil piercing may work if it were unexpectedly adopted in Kentucky. Counsel, let me stop you here just for a second because part of my problem trying to understand the case is the different uses of terminology. Because when I went into this, alter ego meant one thing to me from overall corporate law, and I'm not sure here whether alter ego is simply a generic term for all of these kinds of different combinations or whether as you're using it, it's a very particular theory. Your Honor, I would submit to the court that under Kentucky law, alter ego is a way to pierce the veil. It's a method to get to veil piercing. And in Kentucky, under Kentucky law, in essence, what I would deem traditional… alter ego, which is the two are simply one, ab initio, which some people would use it that way. Right. In terms of, if I understood your question correctly, Judge, in terms of how reverse veil piercing alter ego may work, the best indicator of that, as pointed out by both of the lower courts, is how traditional veil piercing works in Kentucky. That type of veil piercing simply exposes the assets of a shareholder to recovery from a judgment debtor of a corporation. When such assets would otherwise be beyond the reach of the judgment creditor due to the veil of limited liability. It does not recharacterize or change the ownership of those assets. That's what the appellant is arguing here. It simply, there's no basis for it in Kentucky. Because if you simply called it reverse, then you would say it exposes the assets of the corporation to the debts of the shareholder. Precisely, Your Honor. And that still wouldn't get the transfer back from beads and steeds. That's correct because that would not transform the transfer of the property by Metal Lake to beads and steeds into a transfer of the property by the debtors to beads and steeds. And that's also recognized by the fact that Kentucky recognizes veil piercing as a remedy. Here the trustee is trying to use the remedy on the front end to, in effect, address a fatal deficiency in her claims. It simply doesn't work like that. And there's no indication under any sort of Kentucky law that it would. That harkens back to the Lee case where in that instance, which dealt with Kentucky's garnishment statute, there was a judgment first before there was any discussion of alter ego or other similar matters. I would like to turn for just a moment on the substantive consolidation claim. That is a judicially created doctrine that pools assets and liabilities to satisfy the debts of both entities. Isn't that the equitable doctrine that really was created for the situation the trustee wants to use it, I mean use here, right? Even though that's something that the trustee backed into, I would agree with you, Judge Griffin. It was created for circumstances somewhat similar to this, or at least allegations like this. And I think it was interesting, he says, it's not my stronger argument. Well, the problems with that claim, as found by the bankruptcy judge, was that the complaint lacked specific facts, I think, under Trombley. That creditors relied on representations of the two were the same, the debtors and the company were the same, and that there was not allegations of co-mingling of assets. All these factual proofs that the only allegation was on information and belief, and then there were conclusory statements in there. And the bankruptcy judge says that's insufficient. I guess my question is, even if Kentucky law recognized a reverse veil piercing, wouldn't these defenses likely be in Kentucky law too? And wouldn't the Kentucky consolidation claim fail just like this federal substantive consolidation claim failed? The defect is the same, I think. Yes, Your Honor. As a matter of fact, in the original complaint, neither Meadow Lake nor the debtors were even parties. Yet what the trustee is advocating for is the combination of those two through reverse veil piercing when neither of them are even parties before the court at the time she made that claim. And as I think the court is pointing out, the amended complaint sounds in reverse veil piercing as opposed to substantive consolidation because substantive consolidation is focused on the creditors. Reverse veil piercing exposes – or excuse me, veil piercing, generally speaking, exposes assets that are otherwise unavailable. Usual. Usual. Not – but here they want to do it reverse. Right, and substantive consolidation pulls everything together. So in effect, there's one entity that has all the assets and all the liabilities. The reason the test for substantive consolidation is so focused on the creditors, it's because the creditors are the – some section of the creditor body is who bears the burden of that. I guess my point is if there's a Kentucky state law claim that does the same thing as state law, wouldn't these same defenses apply? Yes, Your Honor. I mean, we don't know what Kentucky's Supreme Court would – their law would be in this instance, but it seems to me it would probably be consistent with the federal law. I agree, Your Honor. Would any of these concepts, either one of them that we're talking about, be any different if the facts, which they aren't, of course, were that the debtors formed a metal lake. One week later, they transferred the property to Metal Lake. One week later, Metal Lake transferred it to Steeds. And one week after that, the debtors filed for bankruptcy. Your Honor, I don't know that it would simply because in terms of substantive consolidation anyway, it's what the creditors' perception of the two target entities are. Well, the problem with that is that one person can be an LLC, can't they? Yes, Your Honor. And so a lot of attorneys and so forth and so on. So the average person who isn't knowledgeable doesn't even know what the initials stand for. So when I walk into an attorney's office that's an LLC, I assume it's just one entity that I'm dealing with. So to that degree, there is some perception out there by creditors that – of the merger of these people. Yes, Your Honor, and that's precisely part of what has to be proven before there can be a substantive consolidation finding. In this particular instance, under the facts as alleged by the trustee, which both the bankruptcy court and the district court considered true for purposes of the procedure, there simply wasn't enough for, A, the extraordinary remedy of substantive consolidation, generally speaking. What's even more extraordinary is a claim for substantive consolidation between a debtor entity and a non-debtor entity because what they've effectively asked for is for Meadowlake to be deemed a debtor as of June 19, 2007. That opens up a whole host of other unintended consequences. For example, under 11 U.S.C. 362, the automatic stay provision, the bankruptcy code, transactions made after a petition is filed, in other words, after a bankruptcy has begun, may be voidable. That could mean every transaction that Meadowlake had since 2007 is potentially voidable. It increases the jurisdiction of the bankruptcy court under 28 U.S.C. 1334. There's just so many – it's such an extraordinary claim. It's such an extraordinary request that substantive consolidation between a debtor and non-debtor entity because of the impact that it has on the creditor body and, frankly, the understanding, general understanding of commercial law and bankruptcy law, etc., etc., is just profound. And it's – she simply failed to make a substantive consolidation claim as both lower courts agreed. Thank you. Counsel? Yeah. I have two minutes for rebuttal. Mr. Lloyds? I'm sorry. I'm sorry. No, that's fine. I thought you had stopped. No, no. I was pausing for breath. Okay. No, thank you. No, I – Do you have something else? That will conclude. I just urge affirmance and stand on my brief. Thank you, Your Honors. I read his deep breath. The debtors scheduled Meadow Lake in their bankruptcy filing in 2012 as worth zero. If Meadow Lake had sold the property for a fair value, that wouldn't have occurred. What's lost here, I think, although we're trying to address the legal issues, but what's lost here is a very real fact that the debtors continued to enjoy Meadow Lake, continued to operate it, and I'm so sorry that I'm precluded from telling you what else happened after the story ended here for this appeal. But the – We are limited to the record. We are. And so I won't go into it. But at $1,000 a month rent for an $800,000 property, you've got to know something else was wrong here. What would a creditor know that they were paying below market rent? How would a creditor know that? Would a creditor know that? No. Well, I don't know why a creditor would need to know that. Well, you say that they understand that they're one entity, really. No. What I meant to say is this was an inside deal, and as alleged in the complaint, the promise was to reconvey this to the debtors once they were able to repay the purchase price. And, in fact, alleged in the complaint, the debtor's father paid off the purchase money mortgage that Beeds and Steves gave when they bought the property, and they borrowed all the money, and all of it's been paid back to the bank. And the debtor's father did not take even a mortgage on it. I want to address the two Kentucky cases that opposing counsel referred to. The Supreme Court case that is referred to, Turner v. Andrew, the issue there was whether the owner of an LLC could bring a lawsuit for damages to the LLC. And the court said, no, the LLC's got the claim. And it was not even an issue about piercing the corporate veil. I mean, they had the wrong party. And in the other case, the Williams case, the court very clearly said there wasn't anything raised below it as to the issue of piercing, and there's no case law cited. Counsel, I think we've got that. Okay. Unless my colleagues have further questions. Thank you. That case will be submitted, and the clerk may call the next case.